IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LUCIOUS C. ALLEN**,

       Plaintiff,　　　　　　　　　　　　　　　　　　　　　　No. 3:11-cv-00263-MO

           v.　　　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER

**MICHAEL J. ASTRUE, Commissioner of Social Security**,

       Defendant.

       **MOSMAN, J.**,

Luscious C. Allen, Jr., challenges the Commissioner's decision partially denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g) and now affirm the Commissioner's decision.

### PROCEDURAL BACKGROUND

On September 15, 2005, Mr. Allen filed for DIB and SSI under Title II and Title XVI of the Social Security Act, claiming disability beginning on September 17, 2005. AR 13. The applications were denied on February 27, 2006, and upon reconsideration on October 4, 2006. *Id.* An administrative law judge ("ALJ") held a hearing on January 15, 2009. *Id.* On February 10, 2009, the ALJ issued her decision, finding Mr. Allen disabled for DIB and SSI purposes

1 – OPINION AND ORDER

beginning on December 1, 2007, but not disabled prior to that date. *Id*. at 20. The Appeals Council denied review on January 28, 2011, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1. Mr. Allen appealed on March 2, 2011.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner. *See Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); 20 C.F.R. §§ 404.1520, 416.920 (establishing the five-step evaluative process for DIB and SSI claims). At step one, the ALJ found Mr. Allen had not engaged in substantial gainful activity since the alleged onset date of September 17, 2005. AR 15. The ALJ then found Mr. Allen has the following severe impairment: degenerative disc disease of the lumbar spine with chronic strain. *Id*. Continuing to step three, the ALJ concluded Mr. Allen's severe impairment did not equal a disorder listed in the Commissioner's regulations. *Id*. at 16.

The ALJ then evaluated Mr. Allen's residual functioning capacity ("RFC"). She found that, before December 1, 2007, Mr. Allen had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), with the limit that Mr. Allen do no more than the following:

> [L]ift 20 pounds frequently, 25 pounds occasionally, and 50 pounds maximum. He could sit 8 hours out of an 8-hour day with normal breaks, stand 8 hours out of an 8-hour day with normal breaks, and walk 8 hours out of an 8-hour day with normal breaks. He had no significant postural or manipulative limitations. He had no environmental limitations.

AR 16. Beginning on December 1, 2007, the ALJ found Mr. Allen only had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). *Id*. at 18. At step four, the ALJ found that, prior to December 1, 2007, Mr. Allen could perform his past relevant work. *Id*. at 19. Therefore, he was not disabled prior to December 1, 2007. *Id*. at 20. However, beginning on December 1, 2007, Mr. Allen could not perform his past relevant work. *Id*. at 19. Moving on

2 – OPINION AND ORDER

to step five for that time period, the ALJ concluded there were not a significant number of jobs in the national economy Mr. Allen could perform as of December 1, 2007. *Id*. at 20. Accordingly, the ALJ concluded Mr. Allen became disabled on December 1, 2007. *Id.*

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882.

## DISCUSSION

Mr. Allen attacks the ALJ's conclusion that he was not disabled until December 1, 2007, arguing the ALJ improperly (1) failed to identify Mr. Allen's peripheral neuropathy as "severe"; (2) discredited Mr. Allen's testimony; (3) discredited testimony from Mr. Allen's daughter; (4) rejected opinions of Dr. Mathew J. Breeze and Dr. Stephen J. Thomas, plaintiff's treating physicians; and (5) identified an erroneous RFC for the time period before December 1, 2007.

### I.    The ALJ's Step Two Findings

Mr. Allen first argues the ALJ erred at step two by not finding his peripheral neuropathy to be a "severe" impairment. (Pl.'s Br. [16] 11). However, where an ALJ finds one severe impairment at step two, a failure to identify additional severe impairments is harmless if the ALJ

3 – OPINION AND ORDER

considers the additional impairments later in the sequential analysis. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."). Thus, any error at step two was harmless here, and I reject this argument.

## II. Claimant's Credibility

In analyzing a claimant's subjective testimony, an ALJ must engage in a two-step inquiry. First, the ALJ must determine whether the claimant presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (quotation omitted). The ALJ may consider ordinary credibility factors, objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Mr. Allen testified that he stopped working in 2005 due to back and foot pain, frequently has to lie down for several hours, can stand no more than fifteen minutes, and can sit no more than twenty minutes. *See* AR 16. The ALJ found Mr. Allen's impairments could reasonably be expected to produce the alleged symptoms, but that Mr. Allen's statements as to intensity, persistence, and limiting effects of the his symptoms were not credible to the extent they were

inconsistent with the RFC defined for the time period prior to December 1, 2007. *Id*. at 17.[1]
This adverse credibility determination only applied prior to December 1, 2007; the ALJ did not discredit Mr. Allen's claimed limitations after that date. The ALJ gave at least two sufficient reasons for this conclusion.

First, the objective medical evidence was not consistent with Mr. Allen's claimed symptoms prior to December 1, 2007. *Id*; *see Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly discredited testimony where ALJ "identified several contradictions between claimant's testimony and the relevant medical evidence"). Several pieces of evidence from 2005 and 2006 indicate Mr. Allen's limitations were not as drastic during those years. For example, in January of 2006, Dr. Terri Robinson examined plaintiff and opined that he could stand, walk, sit, lift, and carry without limitation. AR 246. Dr. Robinson identified only "mild" tenderness in Mr. Allen's spine. *Id*. Moreover, in May of 2007, Dr. Breeze recommended that Mr. Allen find a job and maintain his activity level. *Id*. at 298. This evidence does not align with Mr. Allen's asserted inability to stand or sit during this time period.

Plaintiff argues several records support Mr. Allen's statements, but, critically, the records that provide the strongest support were generated after December 1, 2007. (*See* Pl.'s Br. [16] 13–14). The only cited records that preceded December 1, 2007, are (a) a note by a physical trainer in October of 2006 that plaintiff had mild weakness in his right foot, and (b) a February of 2007 note by Dr. Breeze that Mr. Allen had no reflexes at the bilateral knees (which was followed a few months later by the recommendation that he find work and maintain activity). Neither piece of evidence shows Mr. Allen's impairments were as severe as he claimed before

---

[1] Plaintiff argues the ALJ improperly defined an RFC and then, without more, simply found Mr. Allen not credible to the extent his testimony was inconsistent with the RFC. However, "[t]here is nothing wrong with an ALJ stating a conclusion and then explaining it, as opposed to providing explanation and then reaching a conclusion." *Black v. Astrue*, 10-cv-06409-MO, 2011 WL 6130534, at *6 (D. Or. Dec. 7, 2011). Thus, I reject this argument. The issue is whether the reasons the ALJ gave after this conclusion are sufficient.

5 – OPINION AND ORDER

December 1, 2007. And records from 2008 and 2009 do not conflict with the ALJ's analysis. Thus, inconsistencies with the medical evidence justified partially discrediting Mr. Allen's testimony for the time period prior to December 1, 2007.

Second, Mr. Allen's testimony was not consistent with his activities of daily living. He reported that he takes walks, cleans, does not require assistance with household chores, and visits friends frequently. AR 132–33. On March 30, 2007, Mr. Allen reported that he had been working around the house, doing countertop work and painting. *Id*. at 236. He now argues that physical activity worsened his condition. (Pl.'s Br. [16] 15). However, the reported daily activities appear inconsistent with Mr. Allen's purported inability to stand or sit for more than twenty minutes, and the ALJ's interpretation was reasonable. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it."). Thus, the ALJ did not err in her treatment of Mr. Allen's testimony.

**III.    Lay Testimony**

An ALJ must take into account lay testimony concerning a claimant's symptoms, unless she gives germane reasons to discount such evidence. *See Stout v. Comm'r of Soc. Sec. Adm'n*, 454 F.3d 1050, 1053 (9th Cir. 2006). In this case, Mr. Allen's daughter completed a report, which generally supported Mr. Allen's claims of pain and difficulty sitting or standing. AR 115–21. The ALJ partially discredited this testimony, citing the same reasons discussed above that applied to Mr. Allen's own testimony. For the same reasons discussed above, the ALJ did not err in her treatment of Mr. Allen's daughter's testimony. *See Krueger v. Astrue*, 10-cv-1092-

MO, 2011 WL 3510939, at *3 (D. Or. Aug. 9, 2011) ("If the ALJ provided clear and convincing reasons to discredit the claimant's subjective complaints, and the lay witness's testimony is similar to those complaints, then it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony.") (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

## IV.   Treating Physicians

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). If the treating doctor's testimony is "contradicted by another doctor" the ALJ can reject the testimony for "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating doctor's opinion "is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Id.* Dr. Breeze and Dr. Thomas both eventually opined that Mr. Allen was unable to work. Plaintiff argues the ALJ should have found him disabled as of September 2005, based on these treating physicians' opinions. The issue is whether the ALJ rejected these doctors' opinions and, if so, whether she provided sufficient reasons for doing so.

The ALJ did not err in her treatment of Dr. Thomas's opinion. Dr. Thomas did not even examine plaintiff until November of 2007. And it was not until December 18, 2007, that he concluded plaintiff was unable to work. AR 286. The ALJ gave Dr. Thomas's opinion "significant weight" in finding Mr. Allen disabled as of December 1, 2007, but did not discuss it in regards to the time period preceding December 1, 2007. *Id.* at 19. Plaintiff seems to argue this record suggests Mr. Allen became disabled prior to December 1, 2007. Plaintiff cites no

7 – OPINION AND ORDER

statements from Dr. Thomas to that effect, however. To the contrary, nothing on the face of the records Dr. Thomas generated conflicts with the ALJ's conclusion. There was no need for the ALJ to better explain why she rejected Dr. Thomas's opinion because the ALJ simply did not reject that opinion.

Likewise, the ALJ did not err in her treatment of Dr. Breeze's statements. Plaintiff specifically claims the ALJ mistreated two records from Dr. Breeze. (*See* Pl.'s Reply [21] 3). First, a May 2007 note from Dr. Breeze indicates Mr. Allen cannot lift "significant" weight or sit for "extended periods." AR 287. The ALJ noted this submission is entitled to little weight because it "provides no specific functional limitation," conflicts with Mr. Allen's reported activities of daily living, is unsupported, and is inconsistent with other medical records. *Id.* at 17. I agree. "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan*, 242 F.3d at 1149. Dr. Breeze's statement is conclusory and contradicts Dr. Robinson's 2006 findings and Dr. Breeze's own statement from May of 2007 that Mr. Allen should seek out work. It also conflicts with Mr. Allen's daily activities, discussed above. The other records, and the conclusory nature of Dr. Breeze's statement, provide a "specific and legitimate" reason for giving Dr. Breeze's May of 2007 statement little weight.

Second, plaintiff argues the ALJ mistreated a January of 2009 letter from Dr. Breeze. In this letter, Dr. Breeze opined that Mr. Allen's peripheral neuropathy meets a listing criteria under the Commissioner's regulations, that Mr. Allen has not shown signs of exaggerating his symptoms, and that Mr. Allen is unable to work (although he did not state when Mr. Allen became unable to work). The ALJ gave this letter "little weight" for the time period prior to December of 2007. AR 18.

As to the peripheral neuropathy, the ALJ explained that Dr. Breeze's 2009 opinion is inconsistent with other medical evidence in the record. *Id.* Specifically, Mr. Allen saw a neurology expert in December of 2008, who described Mr. Allen's gait as "normal." *Id*. at 370. And Dr. Robinson's 2006 analysis indicated Mr. Allen's movements were not significantly disturbed at that time. Given Dr. Breeze's lack of explanation on this point and the other records that indicate Dr. Breeze's 2009 conclusion did not apply prior to December of 2007, the ALJ properly concluded that—before December of 2007—Dr. Breeze's 2009 opinion should receive little weight. Similarly, the ALJ explained that Dr. Breeze's statement about symptom exaggeration received little weight because it was not consistent with other evidence in the record, which mostly consisted of notes from Mr. Allen's chiropractor. Mr. Allen told his chiropractor intern that he was concerned about how vocational therapy might affect his disability claim and the chiropractor intern noted that Mr. Allen's disability claim had removed his desire for employment. *Id*. at 327–28. These statements in the record constituted a legitimate reason for giving Dr. Breeze's opinion about Mr. Allen's tendency to exaggerate relatively little weight. Moreover, the reasons for discrediting Mr. Allen's testimony, discussed above, apply equally here because they too undermine Dr. Breeze's opinion that Mr. Allen is not prone to exaggeration.

Finally, Dr. Breeze's 2009 letter does not even state that Mr. Allen has been disabled since September of 2005. In fact, in May of 2007, Dr. Breeze opined that Mr. Allen should return to work, which conflicts with any claim that Mr. Allen was then unable to do so. *See id*. at 298. Thus, to the extent plaintiff argues this 2009 letter shows Mr. Allen was disabled as of September 2005, I reject that argument. Even plaintiff's treating physician does not reach the conclusion that plaintiff says the ALJ should have reached. Thus, the fact that this 2009 letter

9 – OPINION AND ORDER

does not specify when, in Dr. Breeze's opinion, Mr. Allen became disabled constitutes another valid reason to give it little weight as to the time period prior to December 1, 2007.

## V.     The RFC

Plaintiff argues that, based on the arguments discussed above, the RFC was erroneous. Having concluded the ALJ did not otherwise err, I reject this argument.  The only attempt at an independent argument plaintiff seems to make is that, as a matter of common sense, it is "highly unlikely" that any individual of Mr. Allen's age and limitations would be able to perform medium duty work, and it is "much more realistic" that such an individual would be limited to sedentary work.  (Pl.'s Br. [16] 17).  However, this argument is circular and plaintiff cites no evidence to support it.  I therefore reject it.

## CONCLUSION

The Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this   30th   day of March, 2012.

> /s/ Michael W. Mosman
> MICHAEL W. MOSMAN
> United States District Court